1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   DIONNE SMITH-DOWNS and                No. 2:10-cv-02495-MCE-GGH
     JAMES E. RIVERA, both individually
12   and as successors in interest to
     Decedent James E. Rivera, Jr.
13                                         MEMORANDUM AND ORDER
14             Plaintiffs,
          v.
15
     CITY OF STOCKTON, et al.,
16
               Defendants.
17
18                        ----oo0oo----

19        Plaintiffs Dionne Smith-Downs and James E. Rivera

20   (collectively, "Plaintiffs") seek redress from Defendants City of

21   Stockton ("City"), police officers Eric Azarvand and Gregory

22   Dunn, Deputy Sheriff John Nesbitt, Chief of Police Blair Ulring,

23   and Sheriff Steve Moore (collectively, "Defendants") regarding a

24   fatal incident between the Stockton police and Plaintiffs' son,

25   sixteen-year-old James Rivera, Jr. ("Decedent").

26   ///

27   ///

28   ///

                                  1

1       Presently before the Court is a Motion to Dismiss

2   Plaintiffs' Fourth Amended Complaint for failure to state a claim

3   upon which relief may be granted, filed by Defendants Moore and

4   Nesbitt, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

5   Defendant City of Stockton, and individual Defendants Azarvand,

6   Dunn and Ulring joined the Motion to Dismiss.

7

8                        **BACKGROUND**

9

10      Plaintiffs allege in their FAC that on July 22, 2010,

11  Decedent was pursued by police officers and sheriff's deputies

12  (collectively, "officers") after being observed driving a

13  suspected stolen van through a residential neighborhood.  During

14  the pursuit, several police cars deliberately struck the van

15  while Decedent was inside, which caused Decedent to lose control

16  of the van and crash into a wall.  At some subsequent point,

17  officers repeatedly discharged their firearms toward Decedent,

18  who died as a result of the gunshot wounds he sustained.  The

19  officers were observed laughing and "high-fiving" each other

20  after the shooting.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ────────────────

27  [1] Because oral argument will not be of material assistance, the Court ordered this mater submitted on the briefing.  E.D. Cal. R. 230(g).

28

1

**STANDARD**

2

3          On a motion to dismiss for failure to state a claim under

4    Federal Rule of Civil Procedure 12(b)(6),[2] all allegations of

5    material fact must be accepted as true and construed in the light

6    most favorable to the nonmoving party.  Cahill v. Liberty Mut.

7    Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2)

8    "requires only 'a short and plain statement of the claim showing

9    that the pleader is entitled to relief,' in order to 'give the

10   defendant a fair notice of what the . . . claim is and the

11   grounds upon which it rests.'"  Bell. Atl. Corp. v. Twombly,

12   550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

13   47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to

14   dismiss does not require detailed factual allegations.  Id.

15   However, "a plaintiff's obligation to provide the grounds of his

16   entitlement to relief requires more than labels and conclusions,

17   and a formulaic recitation of the elements of a cause of action

18   will not do."  Id. (internal citations and quotations omitted).

19   A court is not required to accept as true a "legal conclusion

20   couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct.

21   1937, 1949-50 (2009) (quoting Twombly, 550 U.S. at 555).  The

22   Court also is not required "to accept as true allegations that

23   are merely conclusory, unwarranted deductions of fact, or

24   unreasonable inferences."  In re Gilead Sciences Sec. Litig.,

25   536 F.3d 1049, 1055 (9th Cir. 2008).

26   ///

27   _____

28          [2] All further references to "Rule" or "Rules" are to the
     Federal Rules of Civil Procedure unless otherwise noted.

"Factual allegations must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555.

Furthermore, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief." <u>Twombly</u>, 550 U.S. at 556 n.3 (internal citations and quotations omitted).  "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." <u>Id.</u> (citation omitted).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." <u>Id.</u>  However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  <u>Id.</u> at 556 (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant a leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the <u>Foman</u> factors as those to be considered when deciding whether to grant leave to amend).
///

4

1  Dismissal without leave to amend is proper only if it is clear

2  that "the complaint could not be saved by any amendment."

3  Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F. 3d 1048,

4  1056 (9th Cir. 2007) (internal citations and quotations omitted).

5

6                              **ANALYSIS**

7      **A.   Plaintiffs' Standing to Bring Successor In Interest**
              **Claims**

8

9          As a threshold matter, Defendants argue that Plaintiffs lack

10  standing to bring their lawsuit because Plaintiffs have failed to

11  comply with the requirements of California law pertaining to

12  bringing a survival action.[3]  (Defs.' Mot. To Dismiss Pls.'

13  Fourth Am. Compl. ["MTD"], filed July 8, 2011 [ECF No. 44].)

14  It is clear in this circuit that standing "is a threshold issue

15  that precedes consideration of any claim on the merits." Cotton

16  v. City of Eureka, No. C 08-04386, 2010 WL 5154945, at *3 (N.D.

17  Cal. Dec. 14, 2010) (citing Moreland v. City of Las Vegas,

18  159 F.3d 365, 369 (9th Cir. 1998)).

19  ///

20  ///

21  ///

22

23      [3] Out of the three claims in the FAC, only two are survival
    actions: the Fourth Amendment Claim for Violation of Decedent's

24  civil rights under 42 U.S.C. § 1983 and the Monell claim under 42
    U.S.C. § 1983.  The remaining claim in the FAC (the Fourteenth

25  Amendment claim for violation of Plaintiffs' right to enjoy
    continued family relations) is not a survival claim because

26  Plaintiffs assert their own personal right and do not bring this
    claim as Decedent's successors in interest.  Accordingly, the

27  requirements of California law regarding Plaintiffs' "standing"
    to bring their claims as Decedent's successors in interest apply

28  only to Plaintiffs' first and third causes of action.

Any party who seeks to "bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing [it]." Moreland, 159 F.3d at 369.

In California, "a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable statute of limitations period." Cal. Civ. Proc. Code § 377.20(a). Under California law, a person who "seeks to commence an action or proceeding . . . as the decedent's successor in interest . . . , shall execute and file an affidavit or a declaration under penalty of perjury" that confirms decedent's personal information, the facts of their death, and other information confirming that the plaintiff is the proper successor to decedent's interests. Id. § 377.32(a). A certified copy of the decedent's death certificate is required to be attached to the affidavit or declaration. Id. § 377.32(c).

For purposes of § 377.32, a successor in interest is "the beneficiary of the decedent's estate." Id. § 377.11. When a decedent does not leave a will, a beneficiary of the decedent's estate is defined under the statute as "the sole person or all of the persons who succeed to a cause of action." Id. § 377.10. Thus, Plaintiffs' declarations to the Court must definitely prove they are "all of the persons" to succeed Decedent's interests.

In three previous orders, the Court requested Plaintiffs to provide appropriate documentation demonstrating that Plaintiffs complied with the requirements under California Code of Civil Procedure.

///

1  The Court is presently in receipt of the joint Declaration of

2  Dionne Smith-Downs and James E. Rivera, Sr. ("the Declaration")

3  stating that they are the successors in interest to the Decedent,

4  and that no other person has a superior right to commence this

5  action.  The Court is satisfied that the content of the

6  Declaration meets the substantive requirements of California Code

7  of Civil Procedure § 377.32.

8      However, Defendants claim that Plaintiffs' Declaration

9  remains inadequate to establish their capacity to bring this

10 action because the Declaration is not actually signed by either

11 Plaintiff.  Instead of hand-written signatures of both

12 Plaintiffs, the electronically submitted Declaration bears a

13 "/s/" and Plaintiffs' types names on the two signature lines.

14     Local Rule 131(f) allows an attorney to submit documents

15 containing non-attorney signatures electronically.  However, to

16 be adequate, such electronically submitted documents, in addition

17 to bearing a "/s/" and the person's name on the signature line,

18 should also state that counsel has a signed original of the

19 electronically-submitted document.  Plaintiffs' Declaration lacks

20 the requisite annotation.

21     The Court has already granted Plaintiffs three opportunities

22 to cure the defects of the Complaint pertaining to demonstrating

23 Plaintiffs' successor in interest status.  In its previous order,

24 the Court specifically warned Plaintiffs that they would not be

25 provided any additional opportunities to correct the Complaint's

26 defects.  [ECF No. 42, at 4.]

27 ///

28 ///

1    Plaintiffs' counsel attributes the inadequacy of the

2    submitted Declaration to inadvertence and/or clerical error, and

3    assures the Court that he, indeed, possesses the original

4    Declaration bearing the handwritten signature of each Plaintiff.

5    (Pls.' Opp. to Defs.' MTD, filed July 28, 2011 [ECF No. 47], at

6    6:7-9, 7:11-15.)  Considering that this is Plaintiffs' fourth

7    attempt to comply with the requirements of California Code of

8    Civil Procedure § 377.32, the Court is inclined to find more than

9    mere inadvertence on the part of Plaintiffs' counsel.[4]  However,

10   the Court recognizes that dismissing Plaintiffs' claims with

11   prejudice would "severely penalize plaintiff[s] for the

12   derelictions of [their] counsel."  See Hardin v. Wal-Mart, Inc.,

13   89 F.R.D. 449, 452 (E.D. Ark. 1981); see also Betty K Agencies,

14   Ltd. v. M/V Monada, 432 F.3d 1333, 1338 (11th Cir. 2005) ("[T]he

15   harsh sanction of dismissal with prejudice is thought to be more

16   appropriate in a case where a party, as distinct from counsel, is

17   culpable.").

18       Accordingly, the Court declines to dismiss Plaintiff's first

19   and third causes of action on the basis of the inadequacy of

20   Plaintiffs' Declaration under Local Rule 131(f).

21   ///

22   ///

23   ────────────────────

24   [4] The Court also notes a discrepancy in the submitted
     Declaration and the attached Decedent's death certificate
25   regarding the last name of Decedent's mother.  Decedent's death
     certificate lists Decedent's mother as Dionne Pruitt, while the
26   Declaration is signed by Dionne Smith-Downs.  The Court suspects
     that "Pruitt" is Dionne Smith-Downs' maiden name (as the death
27   certificate asks for the mother's "birth name"), but cannot be
     sure that Dionne Smith-Downs and Dionne Pruitt are the same
28   person without Decedent's mother explicitly confirming it in the
     Declaration.

Plaintiffs' counsel is hereby directed to submit a corrected declaration which confirms to Local Rule 131(f) and also corrects the discrepancy regarding Decedent's mother's name (noted in footnote 4) within 20 days of the date of this order.  In future filings, strict compliance with Local Rules is required, and failure to submit the corrected declaration may result in sanctions, including but not limited to, dismissal.

> **B.    First Cause of Action: Violation of Decedent's Fourth Amendment Right not to be Subjected to Unreasonable Seizure**

In their first cause of action, Plaintiffs appear to intertwine two distinct causes of action: a Fourth Amendment claim on behalf of Decedent and a wrongful death claim on Plaintiffs' own behalf.  The heading for Plaintiffs' first cause of action reads: "Violation of Civil Rights - Wrongful Death - 42 U.S.C. § 1983."  (FAC at 4:20-22.)  Under California law, "survival actions" under 42 U.S.C. § 1983 are distinguishable from actions for the wrongful death.  <u>Duenez v. City of Manteca</u>, No. CIV. S-11-1820, 2011 WL 5118912, at *6 (E.D. Cal. Oct. 27, 2011) (citing <u>Grimshaw v. Ford Motor. Co.</u>, 119 Cal. App. 3d 757 (1981)).

A survival action is an action that "survives" the decedent's death and can be brought by the decedent's estate for the purpose of recovering damages that would have been awarded personally to the decedent had he lived.  Cal. Civ. Proc. Code § 377.20.

///

A wrongful death action, on the other hand, is an independent claim by decedent's heirs for damages they personally suffered as a result of the decedent's death.  Cal. Civ. Proc. Code § 377.60. A person bringing a wrongful death action does not act in a representative capacity, but sues for his or her own deprivation. "Only survival actions, not wrongful death claims, are compensable under § 1983."  Martinez v. County of Madera, No. 104-CV-05919, 2005 WL 2562715, at *3 (E.D. Cal. Oct. 8, 2005); see also Basler v. City of Susanville, No. CIV. S-06-1813, 2007 WL 2710845, at *6 (E.D. Cal. Sept. 14, 2007) ("Unlike plaintiff's survival action, which relies upon § 1983, the wrongful death action does not.").

    Because Plaintiffs base their first cause of action exclusively on the violation of Decedent's Fourth Amendment right, and do not appear to assert that they personally suffered damages as a result of Decedent's wrongful death, the Court will treat Plaintiffs' first cause of action as a survival action to recover for Decedent's alleged constitutional deprivation under the Fourth Amendment.

    Plaintiffs allege that the use of force by Defendants in apprehending Decedent was unreasonable under the circumstances and thus violated Decedent's right not to be subjected to unreasonable seizure guaranteed by the Fourth Amendment.  (FAC ¶ 16.)  Defendants contend that the factual allegations supporting Plaintiffs' Fourth Amendment claim are inadequate to state a claim for relief.  (MTD at 6:9-10.)  The Court agrees with Defendants.
///

1    An officer's use of excessive force to effect an arrest is a
2  violation of a person's Fourth Amendment right to be free from
3  unreasonable searches and seizures.  Graham v. Connor, 490 U.S.
4  386, 395 (1989).  Courts analyze the Fourth Amendment excessive
5  force claims under an "objective reasonableness" standard.  Id.
6  at 388.  Determination of reasonableness requires the Court to
7  balance "the nature and quality of the intrusion of the
8  individual's Fourth Amendment interests against the
9  countervailing governmental interests at stake."  Id. at 396
10  (internal quotations omitted).  The reasonableness of the use of
11  force is "judged from the perspective of a reasonable officer on
12  the scene," and not from the perspective of the person seized or
13  of a court reviewing the situation "with the 20/20 vision of
14  hindsight."  Id.

15    Apprehension by the use of deadly force is a seizure subject
16  to the Fourth Amendment's reasonableness requirement.
17  Wilkinson v. Torres, 610 F.3d 546, 550 (9th Cir. 2010); Curnow v.
18  Ridgecrest Police, 952 F.2d 321, 324 (9th Cir. 1991).  "However,
19  an officer using deadly force is entitled to qualified immunity,
20  unless the law was clearly established that the use of force
21  violated the Fourth Amendment."  Wilkinson, 610 F.3d at 550.  In
22  analyzing whether qualified immunity applies, courts consider:
23  (1) "whether the facts that a plaintiff has alleged . . . or
24  shown . . . make out a violation of a constitutional right" and
25  (2) "whether the right at issue was 'clearly established' at the
26  time of defendant's alleged misconduct."  Pearson v. Callahan,
27  555 U.S. 223, 232 (2009).
28  ///

1   Case law has clearly established that an officer may not use
2   deadly force to apprehend a suspect where the suspect poses no
3   immediate threat to the officer or others."  Wilkinson, 610 F.3d
4   at 550 (citing Tennessee v. Garner, 471 U.S. 1, 11 (1985)).
5   However, the use of deadly force is constitutionally permissible
6   "[w]here the officer has probable cause to believe that the
7   suspect poses a threat of serious physical harm, either to the
8   officer or to others."  Id. (quoting Garner, 471 U.S. at 11).
9   "Whether the use of deadly force is reasonable is highly fact-
10  specific."  Id. at 551 (emphasis added).

11      The FAC's factual content with regard to circumstances
12  surrounding Decedent's death is insufficient to show Plaintiffs'
13  plausible entitlement to relief for the violation of Decedent's
14  Fourth Amendment rights.  Plaintiffs' factual allegations are
15  limited to demonstrating that: (1) Defendant officers were
16  pursuing a stolen van driven by Decedent in a residential
17  neighborhood; (2) Officers "deliberately" struck the van which
18  caused Decedent to crash into the wall of the garage triplex; and
19  (3) Officers subsequently shot Decedent, while Decedent was still
20  seated behind the wheel of the van and still within the interior
21  of the garage.  (FAC ¶ 14.)  Contrary to Plaintiffs' contention
22  that they have stated a viable claim, the FAC's factual
23  allegations are not sufficient "to raise [Plaintiffs'] right to
24  relief above the speculative level."  See Twombly, 550 U.S. at
25  555.  Without more facts illuminating the circumstances
26  confronting the officers before the fatal shooting, the Court is
27  unable to plausibly infer that their use of force was excessive.
28  ///

12

1    Although the FAC alleges that, at the time of the shooting,

2  Decedent did not pose any imminent threat to the lives and safety

3  of any person (FAC ¶ 14), this allegation is a legal conclusion,

4  which is not supported by sufficient factual content, and thus is

5  not entitled to be taken as true.  See Iqbal, 129 S. Ct. at 1950.

6  Accordingly, the Court dismisses Plaintiffs' first cause of

7  action for failure to state a claim under Rule 12(b)(6).

8

9          **C.   Second Cause of Action: Violation of Plaintiffs'**
             **Fourteenth Amendment Right to Enjoy Continued Family**
10           **Relations**

11

12    Plaintiffs allege that as a proximate result of Defendants'

13  use of force to apprehend Decedent, Plaintiffs have been deprived

14  of their Fourteenth Amendment right to enjoy continuing family

15  relations with Decedent.  (FAC ¶ 17.)  Defendants contend that

16  the factual allegations in the FAC are insufficient to

17  demonstrate the official conduct that "shocks the conscience"

18  required for establishing liability under the Fourteenth

19  Amendment's due process clause.  (MTD at 7:17-8:2.)  The Court

20  finds Defendants' contentions persuasive.

21    Parents of a person killed by law enforcement officers may

22  assert a substantive due process claim under the Fourteenth

23  Amendment based on deprivation of the liberty interest arising

24  out of familial relations.  Moreland, 159 F.3d at 371; see also

25  Wilkinson, 610 F.3d at 554 ("This Circuit has recognized that

26  parents have a Fourteenth Amendment liberty interest in the

27  companionship and society of their children.").

28  ///

                                  13

However, the Fourteenth Amendment inquiry is different from the "objective reasonableness" standard used in the Fourth Amendment excessive force claims.  Under the Fourteenth Amendment, "only the official conduct that 'shocks the conscience' is cognizable as a due process violation." Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008).  The threshold question in such cases is "whether the behavior of the government officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998).

In determining whether police conduct "shocks the conscience," courts use two standards of culpability: "deliberate indifference" and "purpose to harm." Porter, 546 F.3d at 1137.  The deliberate indifference standard applies "[w]here actual deliberation is practical." Wilkinson, 610 F.3d at 554.  The more demanding standard of "purpose to harm" applies "where a law enforcement officer makes a snap judgment because of an escalating situation," for example "where the suspect's evasive actions force the officers to act quickly." Id.  In such situations, the proper inquiry is whether the police officer "acts with a purpose to harm unrelated to legitimate law enforcement objectives." Id.

The parties disagree as to what standard applies to the alleged Fourteenth Amendment violation of Plaintiffs' rights.  Defendants argue that a more demanding showing of the "purpose to harm" is required because the alleged factual situation — "a fleeing criminal suspect at large . . . in a residential neighborhood" — required the officers to "make a snap judgment."

1  (MTD at 7:22-8:2.)   Plaintiffs contend that the less demanding
2  showing of "deliberate indifference" is sufficient because the
3  officers had "an opportunity to reflect on their actions and
4  assess that the shooting was not necessary." (Pls.' Opp. at
5  10:14-17.)

6       The FAC's limited factual content does not allow the Court
7  to determine which standard of culpability should apply to the
8  alleged Fourteenth Amendment violation.   However, such a
9  determination is not necessary at this stage in the litigation.
10 As long as the FAC sufficiently shows Plaintiffs' entitlement to
11 relief based on either standard, the motion to dismiss should be
12 denied.   The Court finds that Plaintiffs have failed to make the
13 requisite showing.

14      The only support for Plaintiffs' Fourteenth Amendment claim
15 in the FAC is the allegation that the officers discharged their
16 firearms at Decedent although Decedent did not pose any imminent
17 threat to the lives or safety of persons, and that Defendants'
18 conduct in this respect was "unreasonable." (FAC ¶¶ 14,16.)   The
19 FAC is void of any explicit or implicit language suggesting that
20 the alleged police conduct "shocks the conscience."  Plaintiffs'
21 allegations of "unreasonable" behavior by the officers are not
22 sufficient to state a claim for a violation of the Fourteenth
23 Amendment due process clause against the officers.

24      Moreover, the Plaintiffs' factual allegations are inadequate
25 under Iqbal and Twombly to "nudge[] their claims across the line
26 from conceivable to plausible." See Twombly, 550 U.S. at 570.
27 The FAC provides little or no information detailing the
28 circumstances leading to the fatal shooting.

1   The FAC's allegations amount, at best, to "an unadorned,

2   the-defendant-unlawfully-harmed-me accusation," which is

3   insufficient to state a claim for relief.  See Iqbal, 129 S. Ct.

4   at 1949.  Accordingly, the Court dismisses Plaintiffs' second

5   cause of action for failure to state a claim under Rule 12(b)(6).

6

7       **D.    Third Cause of Action: Monell Claim Against the City,**
        **Moore, Ulring**[5]

8

9       Plaintiffs allege that the City and Defendant Ulring had a

10  duty to adequately train, supervise and discipline their police

11  officers in order to protect members of the public, including

12  Decedent, from being harmed by the police unnecessarily.  (FAC

13  ¶ 20.)  Plaintiffs further allege that Defendant Moore had the

14  same duty regarding training, supervising and disciplining the

15  County's deputy sheriffs.  (FAC ¶ 21.)  According to Plaintiffs,

16  these Defendants "were deliberately indifferent to such duties

17  and thereby proximately caused injury to Plaintiffs."  (FAC

18  ¶ 22.)  Defendants contend that Plaintiffs' allegations are not

19  sufficient to state a Monell claim.  (MTD at 6:22-7:15).  The

20  Court agrees with Defendants.

21      Municipalities and local officials cannot be vicariously

22  liable for the conduct of their employees under § 1983, but

23  rather are only "responsible for their own illegal acts."

24  ///

25

26

27      [5]In their third cause of action, Plaintiffs also identify
    "the County" as a Defendant.  (FAC ¶ 21.)  However, the FAC's
28  caption does not list any "County" as a Defendant in this action.
    Accordingly, the Court disregards Plaintiffs' references to "the
    County" in their third cause of action.

16

1  Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (quoting

2  Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)) (emphasis in the

3  original).   In other words, a municipality may only be liable

4  where it individually caused a constitutional violation via

5  "execution of a government's policy or custom, whether by its

6  lawmakers or by those whose edicts or acts may fairly be said to

7  represent official policy."   Monell v. Dep't of Social Servs.,

8  436 U.S. 658, 694 (1978); Ulrich v. City & County of S.F.,

9  308 F.3d 968, 984 (9th Cir. 2002).   A recent decision from this

10  district summarized the Ninth Circuit standard of municipal

11  liability under § 1983 in the following way:

12          Municipal liability may be premised on: (1) conduct
            pursuant to an expressly adopted official policy; (2) a
13          longstanding practice or custom which constitutes the
            "standard operating procedure" of the local government
14          entity; (3) a decision of a decision-making official
            who was, as a matter of state law, a final policymaking
15          authority whose edicts or acts may fairly be said to
            represent official policy in the area of decision; or
16          (4) an official with final policymaking authority
            either delegating that authority to, or ratifying the
17          decision of, a subordinate.

18  Young v. City of Visalia, 687 F. Supp. 2d 1141, 1147 (E.D. Cal.

19  2009) (citing Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008);

20  Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004); Ulrich,

21  308 F.3d at 984-85, Trevino v. Gates, 99 F.3d 911, 918 (9th Cir.

22  1996)).

23      Besides demonstrating that one of the methods of

24  establishing municipal liability applies, Plaintiffs must also

25  show that the challenged municipal conduct was both the cause in

26  fact and the proximate cause of the constitutional deprivation.

27  Trevino, 99 F.3d at 918.

28  ///

17

In other words, Plaintiffs bear the burden of demonstrating that the City's policy or custom was a "moving force" of the constitutional deprivation and that the alleged injury would have been avoided had the City had a constitutionally proper policy. Gibson v. County of Washoe, 290 F.3d at 1175, 1196 (9th Cir. 2002).

A negligent municipal policy does not violate the Constitution; rather, Plaintiffs must demonstrate that the need for more or different action is "obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390 (1989); Mortimer v. Baca, 594 F.3d 714, 722 (9th Cir. 2010). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino, 99 F.3d at 918.

A municipality's failure to train its employees may create a § 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." City of Canton, 489 U.S. at 388; Lee v. City of L.A., 250 F.3d 668, 681 (2001). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent the municipal policy." Long v. County of L.A., 442 F.3d 1178, 1186 (2006).

1   A plaintiff alleging a failure to train must show that "(1) he
2   was deprived of a constitutional right; (2) the [municipality]
3   had a training policy that 'amounts to deliberate indifference to
4   the [constitutional] rights of the persons' with whom [its
5   employees] are likely to come into contact'; and (3) his
6   constitutional injury would have been avoided had the
7   [municipality] properly trained those officers." Blankenhorn v.
8   City of Orange, 485 F.3d 463, 484 (9th Cir. 2007).

9        Generally, "[e]vidence of the failure to train a single
10  officer is insufficient to establish a municipality's deliberate
11  policy." Id. "That a particular officer may be unsatisfactorily
12  trained will not alone suffice to fasten liability of the
13  [municipality], for the officer's shortcomings may have resulted
14  from factors other than a faulty training program." City of
15  Canton, 489 U.S. at 390-91. Moreover, "adequately trained
16  officers may occasionally make mistakes; the fact that they do
17  says little about the training program or the legal basis for
18  holding the [municipality] liable." Id. at 391. Accordingly,
19  "absent evidence of a 'program-wide inadequacy in training,' any
20  shortfall in a single officer's training 'can only be classified
21  as negligence on the part of the municipal defendant – a much
22  lower standard of fault than deliberate indifference.'"
23  Blankenhorn, 485 F.3d at 484-85 (quoting Alexander v. City &
24  County of S.F., 29 F.3d 1355, 1367 (9th Cir. 1994)).
25  ///
26  ///
27  ///
28  ///

1    In arguing that the FAC sufficiently states a <u>Monell</u> claim

2  against the City, Ulring, and Moore, Plaintiffs rely on the Ninth

3  Circuit's pre-<u>Iqbal</u> decision in <u>Karim-Panahi</u>, 839 F.2d 621, 624

4  (9th Cir. 1988), which held that "a claim of municipal liability

5  under section 1983 is sufficient to withstand a motion to dismiss

6  even if the claim is based on nothing more than a <u>bare allegation</u>

7  that the individual officers' conduct conformed to official

8  policy, custom, or practice." (Pls.' Opp. at 11:14-12:13.)

9  Plaintiffs' reliance on pre-<u>Iqbal</u> law to demonstrate sufficiency

10 of their complaint is misplaced.  The Supreme Court in <u>Iqbal</u> made

11 it clear that conclusory, "threadbare" allegations merely

12 reciting the elements of a cause of action cannot defeat the Rule

13 12(b)(6) motion to dismiss.  <u>Iqbal</u>, 129 S. Ct. at 1949-50.  "In

14 light of <u>Iqbal</u>, it would seem that the prior Ninth Circuit

15 pleading standard for <u>Monell</u> claims (i.e., 'bare allegations') is

16 no longer viable."  <u>Young</u>, 687 F. Supp. 2d at 1149.  Thus, a

17 viable <u>Monell</u> claim against the City, Ulring and Moore requires

18 more than "labels and conclusions" or "a formulaic recitation of

19 the elements of a cause of action.'"  <u>See</u> <u>Iqbal</u>, 129 S. Ct. at

20 1949 (quoting <u>Twombly</u>, 550 U.S. at 555).

21    The FAC does not contain <u>any</u> factual allegations plausibly

22 demonstrating that the City, Ulring or Moore had official or

23 de facto policies of failure to train police officers and deputy

24 sheriffs.  Plaintiffs have failed to identify what training

25 practices the City, Ulring or Moore had and how these practices

26 were deficient.

27 ///

28 ///

1  See Young v. City of Visalia, 687 F. Supp. 2d 1141, 1150 (E.D.

2  Cal. 2009) ("[W]ithout identifying the training and hiring

3  practices, how those practices were deficient, and without an

4  identification of the obviousness of the risk involved, the Court

5  cannot determine if a plausible claim is made for deliberate

6  indifference conduct."). Moreover, the FAC's factual content is

7  not sufficient to plausibly suggest that the alleged municipal

8  policies were "the moving force" behind the constitutional

9  deprivation at issue.

10    Accordingly, construing the facts in the light most

11  favorable to the non-moving party, the Court finds that

12  Plaintiffs have failed to state a Monell claim upon which relief

13  can be granted.

14

15                          **CONCLUSION**

16

17    For the reasons stated above, Defendants' Motion to Dismiss

18  the Forth Amended Complaint is GRANTED. There is sufficient

19  basis to dismiss this action with prejudice because Plaintiffs

20  have been afforded several opportunities to cure the defects of

21  their complaint but failed to do so adequately. Moreover,

22  Plaintiffs' opposition explicitly states that Plaintiffs "do not

23  seek leave of the Court to amend the Complaint." (Pls.' Opp. at

24  13:10-11.) However, the Court believes that dismissing the FAC

25  with prejudice would be a harsh punishment for Plaintiffs arising

26  from failures of their counsel.

27  ///

28  ///

Additionally, although the Court warned Plaintiffs that they
would be granted no additional leave to amend, the Court believes
that dismissal with prejudice would be unfair to Plaintiffs
because the Court's prior orders did not address the merits of
the complaint and did not consider the complaint's sufficiency
under Rule 12(b)(6).

The Ninth Circuit has instructed district courts to grant
leave to amend when dismissing a case for failure to state a
claim, even if a plaintiff has made no request to amend the
pleading, "unless [the court] determines that the pleading could
not possibly be cured by the allegations of other facts."
Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).
Accordingly, the Court grants Plaintiffs one final opportunity to
cure the deficiencies of their complaint.  Plaintiffs are
therefore given leave to amend to file their Fifth Amended
Complaint; however, no further leave to amend will be given.  If
Plaintiffs decide to amend their complaint, the Court expects
Plaintiffs to cure both the technical deficiencies of their
Declaration and the substantive deficiencies of their complaint.

Any amended pleading consistent with the terms of this
Memorandum and Order must be filed not later than twenty (20)
days following the date the Memorandum and Order is signed.

IT IS SO ORDERED.

Dated: February 29, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

22