1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11    DIONNE SMITH-DOWNS, et al.,              No.  2:10-cv-02495-MCE-CKD

12              Plaintiffs,

13        v.                                   **MEMORANDUM AND ORDER**

14    CITY OF STOCKTON, et al.,

15              Defendants.

16

17        Following an automobile chase, defendant police officers Eric Azarvand, Gregory

18   Dunn, and John Nesbitt shot and killed James E. Rivera, Jr. ("Rivera").  Plaintiffs Dionne

19   Smith-Downs and James E. Rivera, Sr. ("Plaintiffs")—Rivera's parents—bring suit

20   against the defendant police officers, alleging that they used excessive force against

21   their son in violation of the Fourth Amendment.  Defendants have now moved for

22   summary judgment on all claims against them on the basis that the force used against

23   Rivera was reasonable.  ECF Nos. 99–100.  For the reasons that follow, those motions

24   are DENIED.[1]

25   ///

26   ///

27   _____
          [1] Because oral argument would not have been of material assistance, the Court ordered this
28   matter submitted on the briefs.  See E.D. Cal. Local R. 230(g).

1

**BACKGROUND**[2]

2

3    Rivera had been a suspect in an armed carjacking of a blue Chevrolet Astro van.

4    See Azarvand & Dunn SUF ¶ 1; Nesbitt SUF ¶ 1–2.  On July 22, 2010, Nesbitt spotted

5    the van on a residential street, identified Rivera as the driver, and notified dispatch.

6    Nesbitt SUF ¶ 6.  As a result, Azarvand and non-party police officer Michael Hughes

7    arrived on the scene in separate marked police cars and attempted to pull over the van.

8    Azarvand & Dunn SUF ¶¶ 4, 5–7; Nesbitt SUF ¶¶ 7–8.  Rivera did not pull over, and

9    instead a high-speed chase ensued wherein Hughes, Azarvand, and Nesbitt all pursued

10    the van in separate vehicles.  Azarvand & Dunn SUF ¶ 8; Nesbitt SUF ¶¶ 9–11.  Dunn

11    eventually joined the pursuit, and ended up being the vehicle directly behind the van.

12    Azarvand & Dunn SUF ¶ 18–19.  The pursuit ended when police vehicles rammed the

13    van and the van hit a parked car, drove over the sidewalk, and ran into a house's

14    garage.  Azarvand & Dunn SUF ¶¶19–20; Nesbitt SUF ¶¶ 18.[3]

15    After striking the garage, the van penetrated the wall and became lodged almost

16    wholly within the garage.  Nesbitt SUF ¶ 19.  Dunn stopped his vehicle directly behind

17    the van, while Azarvand parked his car to the left of the van.  Azarvand & Dunn SUF

18    ¶ 25; Nesbitt SUF ¶¶ 22, 25.  The parties have not provided any indication of exactly

19    where Nesbitt parked, but it seems clear that he did stop his car at the scene.  Azarvand,

20    Dunn, and Nesbitt all exited their vehicles and drew their weapons.  Azarvand & Dunn

21    SUF ¶¶ 22, 26; Nesbitt SUF ¶¶ 24–26.  Azarvand positioned himself to the left of Dunn,

22    and Nesbitt positioned himself behind metal mailboxes to the right of Dunn.  Azarvand &

23

24    [2] As the three officer defendants are represented by two sets of counsel, they have filed two
separate motions for summary judgment and two separate statements of undisputed facts.  ECF Nos. 99,

25    99-2, 100, 100-2.  The statements of undisputed facts will be referenced as "Azarvand & Dunn SUF," ECF
No. 99-2, and "Nesbitt SUF," ECF No. 100-2.  Plaintiffs filed only a single opposition that responds to both

26    motions, ECF No. 101, and separate responses to each of Defendants' statements of undisputed facts,
which will be referenced as "Resp. to Azarvand & Dunn SUF," ECF No. 103", and "Resp. to Nesbitt SUF,"

27    ECF No. 104.

[3] Plaintiffs dispute portions of the foregoing statements, but not the portions supporting the Court's
28    recitation of facts here.

2

Dunn SUF ¶¶ 25–26; Nesbitt SUF ¶¶ 25–26.  Dunn positioned himself behind the open driver-side door of his vehicle.  Azarvand & Dunn SUF ¶ 23; Nesbitt SUF ¶ 23.  Dunn was within a triangle formed by the open door, the side of Dunn's vehicle, and the side of the vehicle Rivera hit before striking the garage.  Azarvand & Dunn SUF ¶¶ 23; Nesbitt SUF ¶ 23.

Exactly what happened next forms the basis of the main dispute between Plaintiffs and Defendants.[4]  It is undisputed, however, that the van's tires began spinning, spraying mud and debris.  Azarvand & Dunn SUF ¶¶ 40–41; Nesbitt SUF ¶¶ 29–30.  Without providing exactly how much time passed, Defendants state that less than 30 seconds[5] after they drew their weapons, the three officers fired a total of 29 rounds at Rivera, killing him.  Azarvand & Dunn SUF ¶¶ 36–37, Nesbitt SUF ¶¶ 34–36, 38, 40.  The officers all claim that they fired because they feared that Dunn was in danger of being hit by the van and fired to stop Rivera from reversing into him.  Dep. of Gregory Dunn, ECF No. 99-5, Ex. A, at 47:24–48:9; Dep. of Eric Azarvand, ECF No. 99-5, Ex. B, at 116:6–10; Decl. of John Nesbitt, ECF No. 100-3, ¶ 31.  However, they do not agree on the specific facts that led them to form that concern.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

---

[4] Though Plaintiffs' Fifth Amended Complaint alleges Defendants violated Rivera's constitutional rights both in ramming the van to end the car chase and in opening fire after the van struck the side of the garage, see Fifth Am. Compl., ECF No. 52, ¶ 31, Plaintiffs' opposition only addresses the latter of these allegations.  Indeed, Plaintiffs distinguish the instant case from others that found the use of deadly force reasonable because they all "involve[d] a use of force utilized to end a chase that is in process."  Pls.' Opp'n to MSJs, ECF No. 101, at 11–12.

[5] Only Nesbitt's statement of undisputed facts provides any indication of how much time passed between the officers drawing their weapons and firing, stating that "[l]ess than thirty seconds elapsed." Nesbitt SUF, ¶ 28.

1    <u>Catrett</u>, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to

2    dispose of factually unsupported claims or defenses.  <u>Celotex</u>, 477 U.S. at 325.

3        Rule 56 also allows a court to grant summary judgment on part of a claim or

4    defense, known as partial summary judgment.  <u>See</u> Fed. R. Civ. P. 56(a) ("A party may

5    move for summary judgment, identifying each claim or defense—or the part of each

6    claim or defense—on which summary judgment is sought."); <u>see also</u> <u>Allstate Ins. Co. v.</u>

7    <u>Madan</u>, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995).  The standard that applies to a

8    motion for partial summary judgment is the same as that which applies to a motion for

9    summary judgment.  <u>See</u> Fed. R. Civ. P. 56(a); <u>State of Cal. ex rel. Cal. Dep't of Toxic</u>

10   <u>Substances Control v. Campbell</u>, 138 F.3d 772, 780 (9th Cir. 1998) (applying the

11   summary judgment standard to motion for summary adjudication).

12       In a summary judgment motion, the moving party always bears the initial

13   responsibility of informing the court of the basis for the motion and identifying the

14   portions in the record "which it believes demonstrate the absence of a genuine issue of

15   material fact."  <u>Celotex</u>, 477 U.S. at 323.  "However, if the nonmoving party bears the

16   burden of proof on an issue at trial, the moving party need not produce affirmative

17   evidence of an absence of fact to satisfy its burden."  <u>In re Brazier Forest Prods. Inc.</u>,

18   921 F.2d 221, 223 (9th Cir. 1990).  If the moving party meets its initial responsibility, the

19   burden then shifts to the opposing party to establish that a genuine issue as to any

20   material fact actually does exist.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,

21   475 U.S. 574, 586–87 (1986); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 288–89

22   (1968).

23       In attempting to establish the existence or non-existence of a genuine factual

24   dispute, the party must support its assertion by "citing to particular parts of materials in

25   the record, including depositions, documents, electronically stored information,

26   affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

27   not establish the absence or presence of a genuine dispute, or that an adverse party

28   cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The

1   opposing party must demonstrate that the fact in contention is material, i.e., a fact that

2   might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby,

3   Inc., 477 U.S. 242, 248, 251–52 (1986); Owens v. Local No. 169, Ass'n of W. Pulp &

4   Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also

5   demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is

6   such that a reasonable jury could return a verdict for the nonmoving party."  Anderson,

7   477 U.S. at 248.  In other words, the judge needs to answer the preliminary question

8   before the evidence is left to the jury of "not whether there is literally no evidence, but

9   whether there is any upon which a jury could properly proceed to find a verdict for the

10   party producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at 251

11   (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)).  As the Supreme Court

12   explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its

13   opponent must do more than simply show that there is some metaphysical doubt as to

14   the material facts."  Matsushita, 475 U.S. at 586.  Therefore, "[w]here the record taken as

15   a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

16   'genuine issue for trial.'"  Id. at 587.

17         In resolving a summary judgment motion, the evidence of the opposing party is to

18   be believed, and all reasonable inferences that may be drawn from the facts placed

19   before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at

20   255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

21   obligation to produce a factual predicate from which the inference may be drawn.

22   Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd,

23   810 F.2d 898 (9th Cir. 1987).

24   ///

25   ///

26   ///

27   ///

28   ///

1

**ANALYSIS**

2

3        A.      **Fourth Amendment Claims**

4        Under the Fourth Amendment, "[t]he right of the people to be secure in their

5  persons . . . , against unreasonable . . . seizures, shall not be violated."  U.S. Const.

6  amend. IV.  Excessive force claims are analyzed under the Fourth Amendment's

7  "objective reasonableness" standard.  See Graham v. Connor, 490 U.S. 386, 395

8  (1989); Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1056 (9th Cir.

9  2003).  The crucial inquiry in excessive force cases is whether the force was "objectively

10  reasonable in light of the facts and circumstances confronting [the officers], without

11  regard to their underlying intent or motivation."  Graham, 490 U.S. at 397;

12  Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007).

13        Calculating the reasonableness of the force used "requires a careful balancing of

14  the nature and quality of the intrusion on the individual's Fourth Amendment interests

15  against the countervailing interests at stake."  Graham, 490 U.S. at 396.  The court "first

16  assess[es] the quantum of force used" then "measure[s] the governmental interests at

17  stake by evaluating a range of factors."  Davis v. City of Las Vegas, 478 F.3d 1048, 1054

18  (9th Cir. 2007).  In Graham, the Supreme Court listed several factors to be considered in

19  assessing reasonableness.  See 490 U.S. at 396.  However, the overall reasonableness

20  calculus is not limited to these factors.  "Rather, [the court] examine[s] the totality of the

21  circumstances and consider[s] 'whatever specific factors may be appropriate in a

22  particular case, whether or not listed in Graham.'"  Bryan v. MacPherson, 630 F.3d 805,

23  826 (9th Cir. 2010) (quoting Franklin v. Foxworth, 31 F.3d 873, 876 (9th Cir. 1994)).

24        Furthermore, reasonableness "must be judged from the perspective of a

25  reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Graham,

26  490 U.S. at 396.  Thus, "[a] reasonable use of deadly force encompasses a range of

27  conduct, and the availability of less intrusive alternatives will not render conduct

28  unreasonable."  Wilkinson v. Torres, 610 F.3d 546, 551 (9th Cir. 2010).  That said, "[t]he

6

1   principle that summary judgment should be granted sparingly in excessive force cases

2   'applies with particular force where the only witness other than the officer[s] was killed

3   during the encounter.'"  Collender v. City of Brea, 605 Fed. App'x 624, 627 (9th Cir.

4   2015) (quoting Gonzalez v. City of Anaheim, 747 F.3d 789, 795 (9th Cir. 2014) (en

5   banc)).  When officer defendants are "the only surviving eyewitness[es], . . . [t]he judge

6   must carefully examine all the evidence in the record, such as . . . contemporaneous

7   statements by the officer[s] and the available physical evidence . . . to determine

8   whether the officer[s'] story is internally consistent and consistent with other known

9   facts."  Scott v. Henrich, 39 F.3d 812, 915 (9th Cir. 1994).

10      Defendants here claim that firing at Rivera was reasonable because "R[ivera]

11  posed a lethal and immediate threat to the safety of Officer D[unn]."  Mem. of P. & A. in

12  Supp. of Def. Nesbitt's Mot. for Summ. J. ("Nesbitt MSJ"), ECF No. 100-1, at 7; see also

13  Mem. of P. & A. in Supp. of Defs. Azarvand & Dunn's Mot. for Summ. J. ("Azarvand &

14  Dunn MSJ"), ECF No. 99-1, at 9 ("They each made the decision to fire at Rivera—a

15  person who was . . . at that very moment attempting to resume his flight by crushing the

16  officer who was attempting to corral him . . . .").  Indeed, using deadly force is considered

17  a reasonable reaction to the threat of someone being hit by a car.  See, e.g.,

18  Wilkinson v. Torres, 610 F.3d 54, 551 (9th Cir. 2010) (finding that an officer did not use

19  excessive force when shooting a driver who was "accelerating around him" and a fellow

20  officer was "nearby either lying fallen on the ground or standing but disoriented.").  In

21  such circumstances, the inquiry turns on whether the officer "had probable cause to

22  believe that [the decedent] posed an immediate threat to the safety of [others]."  Id.

23      Defendants claim that they reasonably believed that it was likely Rivera was going

24  to dislodge the van from the garage and reverse into Dunn.  See Azarvand & Dunn MSJ,

25  at 8–9; Nesbitt MSJ, at 7–8.  Defendants, however, provide inconsistent accounts of the

26  incident.  Azarvand testified that he saw the van's backup lights come on and saw the

27  van move backwards and forwards, hitting Dunn's vehicle repeatedly, and moving

28  "probably between around five" feet before making contact.  Dep. of Eric Azarvand, ECF

1   No. 99-5, Ex. B, at 99:14–15; 104:15–17, 109:3–23. 114:4–9.  Dunn testified that he saw

2   the van only rock backwards and forwards—that is, not move up to five feet as described

3   by Azarvand—which hit his vehicle several times, before yelling out, "He's ramming me."

4   Dep. of Gregory Dunn, ECF No. 99-5, Ex. A, at 44:1–8, 45:24–46:8, 47:5–16.  Nesbitt

5   also testified that he heard the van's engine rev and saw the van move backwards and

6   forwards before lurching suddenly toward Dunn.  Decl. of John Nesbitt, ECF No. 100-3,

7   ¶¶ 27–30.  These and other inconsistences in the record preclude summary judgment.

8   Evaluating the evidence in the light most favorable to the Plaintiffs, the officers watched

9   the van spin its tires as it became clear that it was unable to move, and then fired 29

10  rounds at Rivera.

11          Most importantly, the officers do not agree on how much the van moved before

12  the officers opened fire.  For example, Azarvand testified that the van moved up to five

13  feet before hitting Dunn's vehicle, Dep. of Eric Azarvand, at 109:12–16, while Dunn

14  testified that he positioned his vehicle such that its bumper was "very close, if not

15  touching" the van, Dep. of Gregory Dunn, ECF No. 102-1, 41:21–42:1.[6]  And only Nesbitt

16  averred that he saw the van lurch backwards, prompting him to fire, Decl. of John

17  Nesbitt, ¶¶ 30–31, while the other officers testified that the van hit Dunn's vehicle several

18  times—disagreeing on how far the van moved—and fired after several of those hits.

19  Dep. of Gregory Dunn, 47:11–48:9; Dep. of Eric Azarvand, 114:16–19.  Each officer

20  relies on how the van moved to argue that it was reasonable to believe the van could

21  become loose and hit Dunn, but each officer gives differing accounts of those

22  movements.

23          Thus, Defendants have not provided undisputed facts that establish the shooting

24  was reasonable.  Though each officer testifies that he feared for Dunn's safety, they do

25  not agree on the circumstances that lead them to believe Dunn was in danger.  Because

26          [6] Interestingly, Azarvand and Dunn set forth their expert's opinion that "[t]he total distance
    available for Mr. Rivera to move the . . . van before colliding with Officer Dunn's patrol vehicle is 0 to 15
27  inches" as an undisputed fact, Azarvand & Dunn SUF ¶ 39, but that fact is disputed by their own
    testimony.

28

1    excessive force claims are evaluated under an objective standard, it does not matter that

2    Defendants all reached the same conclusion.  At the summary judgment stage of

3    litigation, Defendants must instead point to undisputed facts that show that a reasonable

4    officer would have found it reasonable to use deadly force.  The relevant facts here—i.e.,

5    whether and/or how the van was moving—are not undisputed.

6         Plaintiffs also point to physical evidence that is in conflict with the officers'

7    accounts and supports their theory of the case.  They note that, for example, a deep tire

8    track was found under the van's rear wheel, making it likely that the van did not move at

9    all, let alone the several feet described by Azarvand or the lurch described by Nesbitt.

10   See Pls.' Opp'n to Defs.' MSJs, ECF No. 101, at 13–14; Decl. of Benjamin Nisenbaum,

11   Ex. F, ECF No. 102-6 (photos of the scene).  This physical evidence lends credence to

12   Plaintiffs' view of the encounter:  the officers watched for up to 30 seconds as it became

13   apparent the van could not dislodge itself and then opened fire.

14        The undisputed evidence, therefore, does not demonstrate as a matter of law that

15   the officers acted reasonably in opening fire on Rivera, and Defendants' Motions for

16   Summary Judgment on Plaintiffs' Fourth Amendment Claims are DENIED.[7]

17                    **B.    Fourteenth Amendment Claims**

18        Defendants similarly move for summary judgment on Plaintiffs' Fourteenth

19   Amendment claims.  Azarvand & Dunn MSJ, at 9–10; Nesbitt MSJ, at 12–13.  "[P]arents

20   have a liberty interest in the companionship of their adult children and have a cause of

21   action under the Fourteenth Amendment when the police kill an adult child without legal

22   justification."  Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1106 (9th Cir. 2014).

23   Such a cause of action is premised on a violation of substantive due process, see

24   Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 371 (9th Cir. 1998), because

---

25   [7] Nesbitt also argues that he is entitled to summary judgment on the basis that, although he shot
26   Rivera, his shot did not kill Rivera.  See Nesbitt MSJ, at 16–17.  A claim of unreasonable force, however,
     does not depend on whether that allegedly unreasonable force was lethal.  Cf. Cotton ex rel. McClure v.
27   City of Eureka, 860 F. Supp. 2d 999, 1014 (N.D. Cal. 2012) ("Had the Decedent survived, he indisputably
     would be entitled to compensation for the pain and suffering he endured as a result of Defendants' use of
28   excessive force . . . .").

1    the Fourteenth Amendment "provides heightened protection against government

2    interference with certain fundamental rights and liberty interests," <u>Washington v.</u>

3    <u>Glucksberg</u>, 521 U.S. 702, 721 (1997).  "The concept of 'substantive due process,' . . .

4    forbids the government from depriving a person of life, liberty, or property in such a way

5    that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered

6    liberty.'"  <u>Nunez v. City of Los Angeles</u>, 147 F.3d 867, 871 (9th Cir. 1998) (quoting

7    <u>United States v. Salerno</u>, 481 U.S. 739, 746 (1987)).  "The substantive component of the

8    Due Process Clause is violated by executive action only when it 'can properly be

9    characterized as arbitrary, or conscience shocking, in a constitutional sense.'"  <u>Arres v.</u>

10   <u>City of Fresno</u>, No. CV F 10–1628 LJO SMS, 2011 WL 284971, at *14 (E.D. Cal.

11   Jan. 26, 2011) (quoting <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 128 (1992)).

12         "In determining whether excessive force shocks the conscience, the court must

13   first ask whether the circumstances are such that actual deliberation [by the officer] is

14   practical."  <u>Hayes v. County of San Diego</u>, 736 F.3d 1223, 1230 (9th Cir. 2013).  If actual

15   deliberation by an officer is practical, that officer's "deliberate indifference" may suffice to

16   "shock the conscience."  <u>Id.</u>  Yet, where deliberation is impractical and the officer is

17   forced to make a "snap judgment" due to a rapidly evolving situation, only conduct "with

18   a purpose to harm unrelated to legitimate law enforcement objectives" may suffice to

19   "shock the conscience."  <u>Id.</u>; <u>see also</u> <u>Tatum,</u> 768 F.3d at 821.

20         Plaintiffs contend that the officers had time to deliberate and therefore the

21   deliberate indifference standard is appropriate.  Pls.' Opp'n to Defs.' MSJs, at 13–14.  In

22   support, they argue that Rivera's "crashing into the residence and being unable to

23   dislodge created time for the officer to deliberate."  <u>Id.</u> at 14.  They also argue that Dunn

24   and Nesbitt's use of multiple magazines of bullets was a "totally unnecessary amount of

25   rounds" that "suggests these officers were frustrated and angered by . . . Rivera

26   engaging them in a high[-]speed chase."  <u>Id.</u>

27         In response, Azarvand and Dunn argue summary judgment should be granted in

28   their favor because "the whole incident from start to finish spanned only several minutes

1   and was quickly escalating" and because firing at Rivera served "a legitimate law

2   enforcement purpose."  Azarvand & Dunn MSJ, at 10.  Nesbitt similarly argues that his

3   "decision to fire his weapon was made in a split-second after he saw the [van] 'lurch'

4   back, appear to gain traction[,] and threaten . . . D[unn]."  Nesbitt MSJ, at 13.

5          As discussed above, however, the exact sequence and timing of events is not

6   undisputed.  For example, it is unclear whether the situation was escalating, or whether

7   the van was stuck in the garage and unable to move.  It is similarly unclear whether the

8   lurch backwards described by Nesbitt occurred, and thus whether the officers made a

9   "split-second" decision in reaction to it.  Accordingly, Defendants' Motions for Summary

10  Judgment on Plaintiffs' Fourteenth Amendment claims are DENIED.

11          **C.     Qualified Immunity**

12         Finally, Defendants move for summary judgment on the basis of qualified

13  immunity.  "Qualified immunity is 'an entitlement not to stand trial or face the other

14  burdens of litigation.'"  Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v.

15  Forsyth, 472 U.S. 511, 526 (1985)).  A qualified immunity analysis has two prongs:

16  (1) whether "[t]aken in the light most favorable to the party asserting the injury, . . . the

17  facts alleged show the officer's conduct violated a constitutional right," and (2) "whether

18  the right was clearly established."  Id. at 201–02.  A court may address these two prongs

19  in either order.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  Accordingly, courts may

20  "bypass[] the constitutional question in the qualified immunity analysis," and address

21  only the second prong when "it will 'satisfactorily resolve' the . . . issue without having

22  'unnecessarily to decide difficult constitutional questions.'"  Ramirez v. City of Buena

23  Park, 560 F.3d 1012, 1023 (9th Cir. 2009) (quoting Brosseau v. Haugen, 543 U.S. 194

24  201–02 (2004) (Breyer, J., concurring)).

25         The "concern of the immunity inquiry is to acknowledge that reasonable mistakes

26  can be made," and that it is "often difficult for an officer to determine how the relevant

27  legal doctrine will apply to the factual situation that he faces."  Estate of Ford v. Ramirez-

28  Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002).  If an officer had a reasonable, albeit

1    mistaken, belief that his use of force was not contrary to clearly established law, the

2    officer is entitled to qualified immunity.  <u>Saucier</u>, 533 U.S. at 205–06.

3          The factual disputes identified above make summary judgment on the basis of

4    qualified immunity inappropriate.  <u>See</u> <u>Sinaloa Lake Owners Ass'n v. City of Simi Valley</u>,

5    70 F.3d 1095, 1099 (9th Cir. 1995) ("If there are genuine issues of material fact in issue

6    relating to the historical facts of what the official knew or what he did, it is clear that these

7    are questions of fact for the jury to determine.").  Viewing the facts in light most favorable

8    to Plaintiffs, the officers knew that the van was immobilized and that Rivera posed no

9    threat to Dunn, yet fired their weapons cumulatively about 30 times at him.  Such

10   conduct would be contrary to established law.  Accordingly, Defendants' Motions for

11   Summary Judgment on the basis of qualified immunity is DENIED.

12

13                                    **CONCLUSION**

14

15         For the reasons provided, Defendants' Motions for Summary Judgment, ECF

16   Nos. 99–100, are DENIED.

17         IT IS SO ORDERED.

18   Dated:  July 26, 2017

19

20                                    MORRISON C. ENGLAND, JR.
                                      UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28